IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| v. | ) | Case No. 3:15-mc-3713-WKW-WC |
| | ) | |
| DONNIE ANDERSON, | ) | |

# RECOMMENDATION
# OF THE MAGISTRATE JUDGE

Before the court is Defendant's Motion to Quash Writ of Execution (Doc. 6). The United States filed a response (Doc. 13) to the motion and Defendant filed a reply (Doc. 14). On August 20, 2015, the District Judge entered an Order (Doc. 7) referring this matter to the undersigned Magistrate Judge "for entry of any orders or recommendations as may be appropriate." For the reasons that follow, the Magistrate Judge RECOMMENDS that Defendant's motion be denied.

## I.   BACKGROUND

By virtue of his plea of guilty on April 30, 2014, Defendant was convicted of several counts of a second superseding indictment alleging his participation in a conspiracy to sponsor and exhibit a dog for participation in an animal fighting venture, as well as separate instances of sponsoring and exhibiting a dog in an animal fighting venture. Defendant was sentenced to ninety-six months' imprisonment, a three-year term of supervised release, and a criminal assessment of $700.00. Am. Judg. (Doc. 681), *Untied States v. Anderson*, No. 3:13-cr-100-WKW-CSC (entered Feb. 3, 2015). Defendant was also ordered to make restitution to the American Society for the

Prevention of Cruelty to Animals in the amount of $580,000.00. *Id.* at 6. The judgment specified that Defendant's combined penalties, the criminal assessment and the restitution payment, were "due immediately" in a "[l]ump sum payment of $580,700.00," and further set out a payment plan for Defendant to begin making his payments under the plan while in custody of the Bureau of Prisons and after his release from custody. *Id.* at 7.

On June 6, 2015, the United States filed with the court its Application for Writ of Execution (Doc. 1), in which it "requests the Court to issue a Writ of Execution directing the U.S. Marshal to enter [a certain parcel of property which Defendant owns in Lee County, Alabama] to perform an appraisal of the properties and to post these properties as subject to a writ of execution." Pl.'s App. (Doc. 1) at 2. On June 17, 2015, the Clerk issued the Writ of Execution (Doc. 2), which was served on Defendant on July 24, 2015. *See* U.S. Marshal's Ack. Serv. (Doc. 3). On August 13, 2015, Defendant filed the instant motion to quash the Writ of Execution.

## II.     DEFENDANT'S ARGUMENT

Defendant appears to request that the court quash the Writ of Execution and require that the United States "adhere to the restitution payment schedule imposed by this Court" in the judgment described previously, or that, in the alternative, the court "establish another reasonable payment schedule for the ordered restitution, taking into consideration Mr. Anderson's current financial circumstances." Def.'s Mot. (Doc. 6) at 1-2. Defendant asserts that the payment schedule imposed by the court in its judgment was agreed upon by the parties and was found "fair and reasonable" by the court and,

therefore, should be honored by the United States. *Id.* at 5. Defendant argues "the Government cannot now seek to apply new, additional methods of collecting restitution that contradict this Court's imposed payment schedule." *Id.* at 6 (citing *United States v. Roush*, 452 F. Supp. 2d 676 (N.D. Tex. 2006)). In effect, Defendant argues, because the United States was aware of the subject property at the time the court established the agreed payment schedule and failed to "request to sell that property to satisfy the restitution amount it agreed to in this case[,]" it "cannot circumvent this Court's payment schedule with a writ of execution." *Id.* at 7. In addition, Defendant argues that it is in the interests of justice that the United States be foreclosed from executing on the subject property because it is his "principal asset" and allowing him to keep it "would be a proactive approach to . . . mitigating a condition of poverty, which is known to increase the likelihood of recidivism." *Id.* at 10.

### III. DISCUSSION

In general, the United States is endowed with the authority to do as it has done in this case: "under 18 U.S.C. § 3664(m)(1)(A), the Government may enforce a restitution order in the manner provided by subchapter B of Chapter 229, or 18 U.S.C. § 3613. Section 3613(a) allows the Government to enforce a judgment imposing a fine in accordance with the procedures for the enforcement of a civil judgment." *United States v. Shusterman*, 331 F. App'x 994, 996 (3d Cir. 2009). Levy pursuant to a writ of execution is expressly one such mechanism for enforcing a judgment. *See* 28 U.S.C. § 3203(a). Hence, notwithstanding a court's establishment of a schedule for making restitution payments, the Government may pursue, and a district court may allow,

3

"additional means to collect the restitution judgment." *Id.* at 997 (citing *United States v. Ekong*, 518 F.3d 285, 286 (5th Cir. 2007)).

The Third Circuit's decision in *Shusterman* is instructive. In that case, Shusterman was sentenced and restitution was imposed in 2006. *Id.* at 995. "In April 2007, the Government moved for a writ of garnishment against property belonging to Shusterman to apply toward the restitution judgment." *Id.* The district court ultimately issued the order of garnishment. *Id.* On appeal, reasoning that Shusterman's "judgment provides that restitution is due immediately[,]" the Third Circuit rejected Shusterman's claim that the "District Court erred in ordering garnishment where it had set a payment schedule for restitution at sentencing." *Id.* at 996-97. *See also Ekong*, 518 F.3d at 286 (rejecting claim that "there was no justification for requiring immediate payment [via the Government's writ of garnishment] because the criminal judgment specified that restitution be paid in installments"); *United States v. Clayton*, 646 F. Supp. 2d 827, 835-37 (E.D. La. 2009) (rejecting argument that Government was precluded from using alternative judgment enforcement mechanisms to collect restitution where criminal judgment established a payment schedule but also recognized that payment schedule was subject to amendment and that no language in the judgment limited or precluded the "Government's right to enforce the restitution order under" the Mandatory Victim's Restitution Act ("MVRA")); and *United States v. Hawkins*, 392 F. Supp. 2d 757, 759-60 (W.D. Va. 2005) (holding that the fact that defendant was current in her required restitution payments did not preclude the Government from pursuing independent enforcement mechanisms).

4

In this case, as noted above, the criminal judgment indicates that Defendant's aggregated criminal monetary penalties, including restitution, are due as a "[l]ump sum payment of $580,700.00 due immediately[,]" with the balance to be paid pursuant to a payment schedule outlined in the judgment. Am. J. (Doc. 681) at 7, *United States v. Anderson*, No. 3:13-cr-100-WKW-CSC (entered Feb. 3, 2015). Although the judgment specifies that "Defendant shall pay restitution in the amount of $25.00 per quarter while in the custody of the Bureau of Prisons[,]" *id.*, the judgment in no way restricts the Government from employing the other judgment enforcement mechanisms available to it under the MVRA. Hence, the Government is not precluded from levying execution upon the subject property by the criminal judgment in this case. *See Shusterman*, 331 F. App'x at 996-97; *Ekong*, 518 F.3d at 286; and *Clayton*, 646 F. Supp. 2d at 835-37.

Defendant's argument that, notwithstanding the statutory enforcement rights available to it under the MVRA, the Government should be precluded from executing upon his real property because of the payment schedule outlined in the judgment is based upon a flawed interpretation of the district court's opinion in *United States v. Roush*, 452 F. Supp. 2d 676 (N.D. Tex. 2006). Indeed, *Roush* appears to be the *only* authority Defendant cites for the proposition that the Government may not levy execution on his property because it is bound, and limited, by the payment schedule outlined in the criminal judgment. *See* Def.'s Mot. (Doc. 6) at 5-7. In *Roush*, the defendant was adjudicated guilty of tax evasion, sentenced to custody, and ordered to make restitution of $652,000.00. 452 F. Supp. 2d at 677. Rather than making Roush's total criminal monetary penalties due immediately, the judgment established a payment schedule

5

requiring Roush to pay $750.00 per month "to commence *60* (e.g., 30 or 60 days) after release from imprisonment to a term of supervision[.]" *Id.* at 678, 680 (emphasis in original).[1] Despite the terms of the judgment, the Government sought to garnish bank accounts in Roush's spouse's name before Roush was released from custody to begin his term of supervision. *Id.* at 680.[2]

In *Roush*, the Government argued "that at any time it can collect the full amount of restitution, without needing court approval[,]" *id.* at 677, which, it asserted, permitted it to "seek a writ of garnishment at any time" because the judgment's payment schedule "does not preclude the government from obtaining payment earlier if it can find any funds." *Id.* at 680. Roush, on the other hand, argued that, because he was not required to make restitution payments at the time that the Government sought to garnish his spouse's accounts, "there is no presently due debt for which the government may garnish." *Id.* Ultimately, the district court found Roush's argument "more persuasive[,]" and held "that

---

[1] The relevant language from the judgment provision utilized by the district court in *Roush* appears on the judgment form utilized in this case at box "D." However, box "D" was not checked by the sentencing judge in this case. Rather, as discussed in this Recommendation, the sentencing judge checked box "A," which made payment of restitution due immediately and established, under box "F," a monthly payment schedule for Defendant to begin making payments while in custody.

[2] A closer examination of the timeline of relevant events than is provided in the District Court's opinion in *Roush* is helpful in understanding the court's opinion in that case and assessing its persuasive value in this case. Roush's judgment of conviction was entered on February 2, 2005. 452 F. Supp. 2d at 677; Judgment (Doc. 153), *United States v. Roush*, No. 3:02-cr-388-N-3 (N.D. Tex. Feb. 2, 2005). After several requests for continuance were granted, Roush's date to report for service of his twenty-seven month sentence was set for August 26, 2005. Order (Doc. 179), *United States v. Roush*, No. 3:02-cr-388-N-3 (N.D. Tex. June 24, 2005). The United States filed its application for writ of garnishment of Roush's spouse's accounts on September 14, 2005. App. for Writ of Garn. (Doc. 2), *United States v. Roush*, No. 3:05-cv-1829-N (N. D. Tex. Filed Sept. 14, 2005). The writ was issued on October 21, 2005. *Id.* at Doc. 8. Hence, the Government initiated its restitution enforcement action long before the express terms of the criminal judgment required Roush to make any restitution payment.

the government may use its enforcement powers under section 3613 only to the extent that restitution payments are currently due and owing under the payment schedule established" in the criminal judgment. *Id.* at 681-82.

Thus, the issue in *Roush* was simple: the timing of the Government's enforcement activities dictated the outcome in that case because the Government sought to garnish bank accounts when, explicitly, no restitution was due to the Government. The Government was not prohibited from garnishing the accounts because the court had limited Roush's restitution payments to $750.00 per month. It was precluded from garnishing the accounts, at that time, because Roush's obligation to make restitution payments had not even begun at the time the Government sought to garnish the accounts. *See id.* ("The Court accordingly holds that the government may use its enforcement powers under section 3613 only to the extent that restitution payments are currently due and owing under the payment schedule [established in the criminal judgment].").

Conceding that his restitution obligations were due immediately, unlike Roush's, Defendant argues that this is only a "minor factual difference" that "does not make *Roush* inapplicable." Def.'s Mot. (Doc. 6) at 7 n.28. To the contrary, the fact that Roush's payments were not due at the time of the Government's enforcement activities was no "minor" factual detail. Indeed, as set forth above, it was the crux of the district court's decision in *Roush*. *See Clayton*, 646 F. Supp. 2d at 832 (describing the lack of an "immediately due" provision in the judgment in *Roush* as "the foundation of the holding" in that case). Thus, where, as in this case, restitution was "due immediately," *Roush* is inapposite. *See, e.g., Shusterman*, 331 F. App'x at 997 n.2; *Clayton*, 646 F. Supp. 2d at

7

836. Hence, even if *Roush* were binding on this court, which it is not, it would not preclude the Government from employing the enforcement mechanism of execution in addition to Defendant's scheduled restitution payments. As is, it appears to lack even significant persuasive value.

Defendant also appears to argue that he should be allowed to keep his property because "it will increase the likelihood of his avoiding poverty, and thus decrease the likelihood of recidivism." Def.'s Mot. (Doc. 6) at 9. Even if this argument could sustain a motion to quash an otherwise valid writ of execution, Defendant's argument in this regard is specious at best. Defendant describes the subject property as his "principal asset." The Government avers that the subject property is "a 5.14 acre parcel of real property . . . which has an estimated value of $17,540" and is "vacant." Gov't's Resp. (Doc. 13) at 1, 8. Defendant offers only the naked assertion that allowing him to "keep his property and retain his only significant resource will provide Mr. Anderson with an exponentially greater possibility of meeting the financial obligations he faces now." Def.'s Mot. (Doc. 6) at 10. Neither his motion nor his reply clarify how keeping a modestly-valued, vacant parcel of real property will somehow make it "exponentially" more likely that he will be able to satisfy his restitution obligations or avoid future criminal conduct. Defendant does not assert that the property has or will provide him with a home upon his release from custody or that he will somehow be able to use the property to generate income far in excess of the estimated value of the property. In the absence of any explanation by Defendant, the undersigned is unable to conjure one on his behalf.

Having established that Defendant has not presented a lawful basis for quashing the writ of execution, the undersigned addresses one other thread presented in Defendant's motion. Although Defendant objects to any characterization of his motion to quash as a request to modify the court's order of restitution, *see* Def.'s Reply (Doc. 14) at 1, the motion to quash explicitly includes the "alternative" request that "this Court establish another reasonable payment schedule for the ordered restitution, taking into consideration Mr. Anderson's current financial circumstances." Def.'s Mot. (Doc. 6) at 2. Notwithstanding Defendant's "alternative" request, he appears to argue that it is the Government's enforcement action via execution which is an improper attempt to effect a modification of the court's restitution order. Def.'s Reply (Doc. 14) at 1; *id.* at 8. However, for the reasons discussed above, the Government's writ of execution is a statutorily authorized enforcement procedure. It plainly is not an attempt to circumvent or modify the court's order of restitution. And, for the reasons stated by the Government, *see* Doc. 13 at 9, any request to modify Defendant's restitution order presented by Defendant in his motion to quash the writ of execution is improper in the context of this enforcement action. Thus, to the extent that, despite his protest to the contrary, Defendant indeed is requesting a modification of his restitution order, such request is due to be denied.

## IV.   CONCLUSION

For all of the reasons stated above, the undersigned concludes that Defendant has failed to articulate any viable basis for quashing the writ of execution entered in this case.

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that Defendant's Motion to Quash Writ of Execution (Doc. 6) be DENIED.  Further, it is

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation **on or before June 29, 2016**.  A party must specifically identify the factual findings and legal conclusions in the Recommendation to which objection is made; frivolous, conclusive, or general objections will not be considered.  Failure to file written objections to the Magistrate Judge's findings and recommendations in accordance with the provisions of 28 U.S.C. § 636(b)(1) shall bar a party from a *de novo* determination by the District Court of legal and factual issues covered in the Recommendation and waives the right of the party to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions accepted or adopted by the District Court except upon grounds of plain error or manifest injustice.  *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982); 11th Cir. R. 3-1; *see Stein v. Lanning Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982); s*ee also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*).  The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Done this 15th day of June, 2016.

/s/ Wallace Capel, Jr.
UNITED STATES MAGISTRATE JUDGE